SIDNEY B. & VERA L. STERN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stern v. Commissioner
Docket No. 14176-78
United States Tax Court
T.C. Memo 1992-374; 1992 Tax Ct. Memo LEXIS 396; 64 T.C.M. (CCH) 1; July 1, 1992, Filed *396 Decision will be entered under Rule 155. Petitioners transferred stock to two foreign situs trusts in exchange for lifetime private annuities. Held, the stock is not placed in a restricted state such as to secure the private annuity payments, and thereby close the annuity transactions within the meaning of 212 Corp. v. Commissioner, 70 T.C. 788, 798 (1978) and Estate of Bell v. Commissioner, 60 T.C. 469, 472-473 (1973). Held further, petitioner's control over the trusts and the trustee supports a finding that the private annuities are unsecured. Randall G. Dick and Jeffrey I. Margolis, for petitioners. Cynthia K. Husted, for respondent. PARR
PARR
SUPPLEMENTAL OPINION PARR, Judge: In our original opinion, Stern v. Commissioner, 77 T.C. 614 (1981), we held that: (1) Transfers of stock by petitioners to two trusts in exchange for private annuities constituted transfers in trust subject to annual payments; (2) petitioners were the real settlors of both trusts; and (3) petitioners were appropriately taxable on the trust's income pursuant to section 677(a) [1] of the grantor trust provisions. The Ninth Circuit *397 Court of Appeals, in a split decision, reversed, holding that the stock transfers were valid sales in exchange for annuities. The court remanded the case for consideration of respondent's alternative argument that, if the stock transfers were valid sales in exchange for annuities, the transactions should be considered "closed" and the resulting gain recognized in the year of sale. Stern v. Commissioner, 747 F.2d 555 (9th Cir. 1984). The basic facts are as follows. During 1971 and 1972 petitioners transferred Teledyne, Inc. (Teledyne) stock to two foreign situs trusts, the Hylton Trust (created by a Canadian attorney) and the Florcken Trust (created by petitioner Vera Stern's father). Petitioners and their children were the beneficiaries of the Hylton Trust, and petitioner Vera Stern and her children were the beneficiaries of the Florcken Trust. In exchange for the Teledyne *398 stock, the Hylton Trust executed lifetime private annuities in favor of petitioners, and the Florcken Trust executed a lifetime private annuity in favor of petitioner Sidney Stern. [2] The annuities were computed using the fair market value of the Teledyne stock, life expectancy tables, and imputing an interest factor of six percent. Before the transfers of stock, the Hylton Trust's assets were limited to an original contribution of $ 5,000, and the Florcken Trust's assets were limited to an original contribution of $ 1,000. The annuity agreements provided that both trusts were obligated to pay the annual annuities to petitioners regardless *399 of the value of the trusts' assets or the amount of income produced by the trusts. However, the trusts' liabilities only extended to the trusts' assets. Accordingly, if a trust's assets were exhausted, the trustee was not obligated to make any further payments. The annuity agreements contained both a default acceleration clause and a confession of judgment clause, and granted petitioners the right to assign the annuity payments. The deeds of settlement with respect to each trust granted broad powers to petitioners. Petitioner Sidney Stern (and upon his death petitioner Vera Stern) possessed a power of appointment over the corpus of the Hylton Trust, and petitioner Vera Stern held a similar power with respect to the Florcken Trust. The powers of appointment were limited to the extent that the power could not be exercised directly or indirectly in favor of the donee, his estate, his creditors, or the creditors of his estate. However, the powers of appointment could presumably be exercised by petitioners in favor of each another. [3]
*400 The deeds of settlement provided the trustee with a broad range of powers including the power to: (1) Guarantee petitioners' loans; (2) loan money to petitioners on an interest-free and unsecured basis; (3) pay premiums on petitioners' life insurance policies; and (4) distribute the trusts' corpus or income to petitioners. Petitioner Sidney Stern could dismiss the Hylton Trust's trustee without cause; petitioner Vera Stern held a similar power with respect to the Florcken Trust. In two instances we have treated private annuity transactions as "closed", thereby resulting in the recognition of gain entirely in the year of sale, Estate of Bell v. Commissioner, 60 T.C. 469 (1973); 212 Corp. v. Commissioner, 70 T.C. 788 (1978). In both cases we found that the private annuities in issue were secured. In Bell v. Commissioner, supra, the taxpayers transferred stock in exchange for a lifetime private annuity. The stock itself (valued at $ 207,600), and a cognovit judgment agreement secured the obligor's promise, which we found had a value of $ 126,200.38. The transferors/annuitants *401 did not retain any of the incidents of control here present. We distinguished Lloyd v. Commissioner, 33 B.T.A. 903 (1936) (holding that an unsecured annuity promise was too contingent to value for purposes of section 111(c) [now section 1001] due to the uncertainty over the obligor's ability to make the annuity payments), on the ground that the annuity promise could be valued because it was secured. Likewise in 212 Corp. v. Commissioner, supra, the taxpayers transferred appreciated real property in exchange for a lifetime private annuity. We found that the real property (valued at $ 169,603.56), an obligation of the lessee to pay rentals on the real property, a confession of judgment clause, and a limitation that the property could not be sold without the consent of the annuitants, all acted to secure a private annuity valued at $ 169,603.56. The limitation that the property could not be sold without the consent of the annuitants represents the only incident of control present in 212 Corp.[4]
*402 Our holdings in both Bell and 212 Corp. were based on the fact that at the inception of the private annuities the security enabled the obligor to make the annuity payments. In both cases, the property sold by the annuitant actually was placed in a restricted state with specific prohibitions concerning its disposition in order to ensure that the obligor was able to comply with his promise to make the private annuity payments. In other words, the assets were secured against dissipation. The possibility that the underlying assets securing payment could suffer a substantial decrease in value did not affect our holdings that the private annuities were secured. Respondent argues that the private annuities at issue are secured within the meaning of Estate of Bell v. Commissioner, supra, and 212 Corp. v. Commissioner, supra, thereby closing the transactions and resulting in the recognition of all gain in the year of sale. Respondent argues that petitioners enjoyed virtually all of the protections of a security interest without formally creating one. Respondent asserts that petitioners' relationship with the trustee and *403 the private annuity agreements provide for certainty of future annuity payments, or in the absence thereof, ensure the receipt of equivalent assets thereby securing the private annuities. Petitioners, on the other hand, argue the private annuities are unsecured, and accordingly their tax treatment in compliance with Rev. Rul. 69-74, 1969-1 C.B. 43, which taxes the gain ratably, is proper. [5] Since no restrictions existed regarding the disposition of the Teledyne stock, petitioners argue that their private annuities are unsecured. We agree with petitioners. *404 In addition, the extent of petitioners' control in this case actually works against finding the annuities to be secured. Since an uncooperative trustee could be summarily replaced, petitioners could effectively deplete, appoint, or cash out the trust assets, thereby rendering the trusts unable to pay the annuities. Therefore, we find the private annuities in issue are unsecured, and accordingly the transactions are not closed within the meaning of Estate of Bell v. Commissioner, supra and 212 Corp. v. Commissioner, supra.
We have considered respondent's other arguments and are not persuaded. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, unless otherwise indicated.↩
2. During the years in issue, 1971 through 1973, petitioners received their annual annuity payments from the Hylton Trust. However, petitioner Sidney Stern did not receive his first annual payment from the Florcken Trust on the original scheduled commencement date of June 29, 1973, or at any other time during the years in issue, due to a later agreement with the Florcken Trust.↩
3. See Stern v. Commissioner, 747 F.2d 555, 561 (9th Cir. 1984) (Enright, J↩., dissenting).
4. We note that both the Bell and 212 Corp. have been criticized by commentators. See Tax Mgmt. (BNA), 195-3rd, Private Annuities, at A-25-A-27, A-45-A-46 (1984, 1991); Allen, "Private Annuities - Capital Gain Treatment for Private Annuities - 212 Corporation v. Commissioner, 15 Wake Forest Law Review 724 (1979); Note, Private Annuities: Closed Transactions? Estate of Lloyd G. Bell, 60 T.C. 469 (1973), 28 Miami Law Review 445 (1974); Campbell, Jr., Note, Income Tax - Section 72 - Definition of Exclusion Ratio and Treatment of Capital Gain Element in a Private Annuity. Estate of Lloyd G. Bell, 60 T.C. 469 (1973), 52 Texas Law Review 149 (1973). See also 212 Corp. v. Commissioner, 70 T.C. 788, 810-814 (Simpson, J., dissenting); Estate of Bell v. Commissioner, 60 T.C. 469, 476-480 (Simpson, J↩., dissenting).
5. Petitioners reported the annuities in accordance with Rev. Rul. 69-74, and argued at the original trial that their adherence to Rev. Rul. 69-74↩ should be respected. Now petitioners argue for the first time on remand that the numerator in the section 72(b) exclusion ratio should be measured by the fair market value of the assets transferred for the private annuities, instead of by their adjusted basis. Such an argument is not within the scope of the Ninth Circuit's remand and should have been raised at the original trial. Accordingly, we will not consider this issue on remand.